J-S45004-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| SAMUEL FRANK MARRERO-NARDO, SR., | : | |
| | : | |
| Appellant | : | No. 169 MDA 2018 |

Appeal from the Judgment of Sentence August 30, 2017
in the Court of Common Pleas of Lebanon County
Criminal Division at No(s): CP-38-CR-0000026-2016

BEFORE: OTT, J., MUSMANNO, J., and PLATT*, J.

MEMORANDUM BY MUSMANNO, J.: **FILED DECEMBER 26, 2018**

Samuel Frank Marrero-Nardo, Sr. ("Marrero-Nardo"), appeals from the judgment of sentence imposed after a jury convicted him of one count each of involuntary deviate sexual intercourse ("IDSI") and statutory sexual assault; and two counts each of unlawful contact with a minor, indecent assault, and corruption of minors.[1] We affirm.

Between May 2004 and May 2005, Marrero-Nardo engaged in a course of sexual conduct with two minor females, S.M., and her younger sister, L.M. At trial, S.M. testified to multiple sexual encounters with Marrero-Nardo, including one that culminated in him performing oral sex on her, and penetrating her vagina with his tongue and penis. L.M. testified to ongoing

---

[1] *See* 18 Pa.C.S.A. §§ 3123(a), 3122.1, 6318(a), 3126(a), 6301(a).

---

\* Retired Senior Judge assigned to the Superior Court.

instances where Marrero-Nardo would ask for sex, inappropriately touch her body, and kiss her on the lips.

The trial court set forth the relevant procedural history underlying this appeal in its Opinion and Order, which we adopt as though fully set forth herein.  **See** Trial Court Opinion and Order, 1/8/18, at 2-4.

After the jury found Marrero-Nardo guilty of the above-mentioned crimes, on August 30, 2017, the trial court sentenced him to an aggregate term of 92 months to 17 years in prison.

On September 6, 2017, the Commonwealth timely filed a Post-Sentence Motion requesting resentencing on the basis that the original sentence was imposed utilizing an incorrect prior record score for Marrero-Nardo.  Two days later, Marrero-Nardo likewise filed a timely Post-Sentence Motion.  On January 8, 2018, the trial court filed an Opinion and Order (hereinafter, the "Post-Sentence Order"), which granted the Commonwealth's Post-Sentence Motion, denied Marrero-Nardo's Post-Sentence Motion, and thoroughly explained the court's reasons for rejecting Marrero-Nardo's several contentions.  The trial court also scheduled a resentencing hearing for January 31, 2018.

Marrero-Nardo filed a Notice of Appeal on January 12, 2018, followed by a timely court-ordered Pa.R.A.P. 1925(b) Concise Statement.  On January 29, 2018, the trial court continued the resentencing hearing until February 15, 2018.  By an Order entered on February 16, 2018, the trial court concluded

that the pendency of the current appeal divested the court of jurisdiction, and declined to resentence Marrero-Nardo.

On appeal, Marrero-Nardo raises the following questions for our review:

I.      Should the Commonwealth be precluded from amending the Information … to include the [IDSI] charge[,] as set forth in Count 1 of the 2nd Amended Information[,] after the [original] IDSI charge had been dismissed following a preliminary hearing?

II.     During the course of the trial, did the Commonwealth present evidence sufficient to prove beyond a reasonable doubt the date(s) of the crime with sufficient particularity[,] and that [Marrero-Nardo] knowingly or intentionally engaged in deviate sexual intercourse with S.M.?

III.    During the course of the trial, did the Commonwealth present evidence sufficient to prove beyond a reasonable doubt the date(s) of the crime with sufficient particularity and that [Marrero-Nardo] knowingly or intentionally contacted S.M. for the purposes of engaging in sexual relations?

IV.     During the course of the trial, did the Commonwealth present evidence sufficient to prove beyond a reasonable doubt the date(s) of the crime with sufficient particularity and that [Marrero-Nardo] knowingly or intentionally contacted L.M. for the purposes of engaging in sexual relations?

V.      During the course of the trial, did the Commonwealth present evidence sufficient to prove beyond a reasonable doubt the date(s) of the crime with sufficient particularity and that [Marrero-Nardo] knowingly or intentionally caused his penis to penetrate S.M.'s genitals?

VI.     During the course of the trial, did the Commonwealth present evidence sufficient to prove beyond a reasonable doubt the date(s) of the crime with sufficient particularity and that [Marrero-Nardo] knowingly or intentionally had indecent contact with L.M.?

VII. During the course of the trial, did the Commonwealth present evidence sufficient to prove beyond a reasonable doubt the date(s) of the crime with sufficient particularity and that [Marrero-Nardo] knowingly or intentionally had indecent contact with S.M.?

VIII. Did the trial court judge impose an illegal and/or unreasonable sentence in the above-captioned matter?

Brief for Appellant at 4-5.

Preliminary, we must determine whether we have jurisdiction over this appeal. **See** Brief for the Commonwealth at 6, 26 (arguing that the case should be remanded so that resentencing may take place). A direct appeal in a criminal case is properly taken from a judgment of sentence. **See Commonwealth v. Yancoskie**, 915 A.2d 111, 112 n.1 (Pa. Super. 2006). Once a timely notice of appeal is filed, jurisdiction vests in this Court. **See Commonwealth v. Green**, 862 A.2d 613, 615 (Pa. Super. 2004) (*en banc*). Conversely, a timely appeal typically divests the trial court of jurisdiction over the case. **See** Pa.R.A.P. 1701(a). As a general matter, an appeal from a judgment of sentence must be filed within 30 days of the imposition of sentence. **See** Pa.R.A.P. 903(c)(3).

Our Rules of Criminal Procedure provide that "[t]he Commonwealth may challenge a sentence by filing a motion to modify sentence," within 10 days of the date on which the sentence was imposed. Pa.R.Crim.P. 721(A)(1), (B)(1). When the Commonwealth timely files a motion to modify sentence, the 30-day direct appeal period commences from the date on which the trial judge disposes of the Commonwealth's motion. **See** Pa.R.Crim.P. 720(A)(4).

Additionally, Rule 720 provides that when a timely post-sentence motion is filed, "the judge retains jurisdiction for the duration of the disposition period." Pa.R.Crim.P. 720, cmt. If the trial court grants a motion to modify sentence, any notice of appeal filed prior to timely disposition of the motion is rendered inoperative. *See* Pa.R.A.P. 1701(b)(3).

Regarding the interplay of the foregoing authorities, the Pennsylvania Supreme Court has explained that

> [the] exception to the general rule that the filing of a notice of appeal divests the trial court of jurisdiction renders a notice of appeal ineffective only if a timely motion for reconsideration is both filed and granted. The exception dovetails with Criminal Rules 720 and 721, both of which indicate that no direct appeal may proceed while a timely post-sentence motion or motion to modify sentence is pending, and any such appeal is rendered premature. Thus, in an appropriate case where a post-sentence motion is granted, there is no conflict between Rule 1701, governing appeals generally, and Rules 720 and 721, which specifically govern appeals in criminal matters.

*Commonwealth v. Cooper*, 27 A.3d 994, 1005 (Pa. 2011) (emphasis and internal citations omitted).

Significantly, however, Criminal Rule 720 explicitly dictates that any order disposing of a post-sentence motion must be entered *within 120 days* of the filing of that motion. Pa.R.Crim.P. 720(B)(3)(a). When the Commonwealth and the defendant each file a post-sentence motion, the "time limits for deciding the defendant's post-sentence motion … apply to the disposition of the Commonwealth's motion[,]" and the "starting date for disposition of both motions [is] the date on which the defendant filed the post-

sentence motion." Pa.R.Crim.P. 721(C)(1). Notably to this appeal, Rule 720 provides that "[i]f the judge fails to decide [a post-sentence] motion within 120 days, … the motion shall be deemed denied by operation of law." Pa.R.Crim.P. 720(B)(3)(a). When a motion is denied by operation of law, "the 30-day period for the defendant's direct appeal … is triggered" and begins to run at the expiration of the 120-day limit. *Id.*, cmt.

This Court has previously held that a post-sentence motion by the Commonwealth was denied by operation of law where the trial court granted, but did not **resolve**, the motion within the 120-day limit of Rule 720. *See* *Commonwealth v. Martinez*, 141 A.3d 485, 489 (Pa. Super. 2016) (stating that under Rule 720, "it is not enough for a trial court … to grant the Commonwealth's post-sentence motion within the original 120-day time limit; the trial court is required to **resolve** the motion for reconsideration within 120 days. Otherwise, the post-sentence motion is deemed denied by operation of law pursuant to Pa.R.Crim.P. 721(C)(2)." (emphasis in original)).

Here, both the Commonwealth and Marrero-Nardo filed timely Post-Sentence Motions. Therefore, the trial court necessarily retained jurisdiction and an appeal could not be taken until the Post-Sentence Motions were disposed of by the trial court, denied by operation of law, or withdrawn. *See* Pa.R.Crim.P. 720, cmt. Importantly, the trial court's January 8, 2018 Post-Sentence Order did not **resolve** the Commonwealth's Post-Sentence Motion. *See Martinez*, *supra*. Specifically, though the Post-Sentence Order granted

- 6 -

the Commonwealth's Post-Sentence Motion, it also scheduled resentencing for January 31, 2018. Accordingly, the *disposition* of the Commonwealth's Post-Sentence Motion, filed on September 6, 2017, was scheduled for a date *outside* the 120-day time limit mandated by Rule 721(C)(1) and Rule 720(B)(3)(a). **See** Pa.R.Crim.P. 720(B)(3)(a) & 721(C)(1). Consequently, the Commonwealth's Post-Sentence Motion was denied by operation of law at the expiration of the 120-day time limit, *i.e.*, on January 8, 2018 (120 days from the filing of Marrero-Nardo's Post-Sentence Motion),[2] pursuant to Rule 721(C)(1), **supra**. **See Martinez**, 141 A.3d at 489; **see also id.** at 490 (stating that "this Court has consistently held that an order issued by the trial court after expiration of the 120-day time limit, resulting in the denial of the post-sentence motion by operation of law, is a legal nullity due to the court's lack of jurisdiction."). It was on this date that the 30-day direct appeal period commenced, **see** Pa.R.Crim.P. 720(B)(1)(a), cmt., and Marrero-Nardo appealed within 30 days of this date. Thus, Marrero-Nardo appropriately and timely appealed from his judgment of sentence, which became an appealable Order once the Commonwealth's Post-Sentence Motion was denied by operation of law. Accordingly, we have jurisdiction over this appeal.

---

[2] 120 days from the filing date of Marrero-Nardo's Post-Sentence Motion fell on Saturday, January 6, 2018. **See** 1 Pa.C.S.A. § 1908 (extending filing deadline to first non-holiday weekday if final date falls on a weekend or holiday).

- 7 -

In his first issue, Marrero-Nardo argues that the trial court erred by permitting the Commonwealth to amend the Information to add a new count of IDSI (hereinafter, the "additional IDSI charge") after the Magisterial District Judge ("MDJ") had dismissed the count of IDSI charged in the original Information at the preliminary hearing.[3]  **See** Brief for Appellant at 9-17 (primarily relying upon **Commonwealth v. Weigle**, 997 A.2d 306, 315-16 (Pa. 2010) (holding that the Commonwealth cannot charge an offense which was dismissed after a preliminary hearing via an amended information on the basis that it was cognate to those charges that were bound over for court)). Additionally, Marrero-Nardo contends that "[t]he Commonwealth's argument to amend the Information to add the [additional] IDSI charge …, if accepted, would render the preliminary hearing meaningless[,] as the Commonwealth would have free reign to ignore the issuing authority's determination as to a *prima facie* case." **Id.** at 12-13.  Marrero-Nardo avers that he was prejudiced by the amendment, and "[i]f the Commonwealth [wa]s unable to overcome the relatively low hurdle on the IDSI charge in question, then [] Marrero-Nardo should never have to assume the burden of defending against it at

---

[3] The factual basis for the original IDSI charge was that S.M. had performed oral sex on Marrero-Nardo.  The MDJ dismissed this charge because it contradicted S.M.'s testimony at the preliminary hearing.  The trial court subsequently permitted the Commonwealth to amend the Information to include the additional IDSI charge on the basis that Marrero-Nardo had performed oral sex on S.M.

trial." ***Id.*** at 17. Finally, Marrero-Nardo contends that the Commonwealth's failure to reinstate the additional IDSI charge with the issuing authority (*i.e.*, the MDJ who presided over the preliminary hearing) was in violation of Pa.R.Crim.P. 544,[4] and divested the trial court of subject matter jurisdiction over this charge. ***See*** Brief for Appellant at 19-21.

In its Post-Sentence Order, the trial court thoroughly addressed and explained Marrero-Nardo's claim, discussed the applicable law (distinguishing ***Weigle*** and the other cases Marrero-Nardo relies upon), and determined that the court did not err in allowing the amendment of the Information. ***See*** Post-Sentence Order, 1/8/18, at 5-13. In sum, the trial court found, *inter alia*, that the amendment was not improper because the original count of IDSI that the MDJ dismissed was not based on the same allegations as the additional IDSI charge, which was never before the MDJ. ***See id.*** at 9-11. As the trial court's analysis and determination is supported by the law and the record, we affirm on this basis in rejecting Marrero-Nardo's first issue. ***See id.*** at 5-13.

In the first portion of his second issue, Marrero-Nardo contends that the Commonwealth's failure to articulate a sufficiently particular timeframe for the additional IDSI charge violated his right to due process. ***See*** Brief for

---

[4] Rule 544 provides, in relevant part, that "[w]hen charges are dismissed or withdrawn at … a preliminary hearing, … the attorney for the Commonwealth may reinstitute the charges by approving, in writing, the re-filing of a complaint with the issuing authority who dismissed … the charges." Pa.R.Crim.P. 544(A).

Appellant at 23-25. Marrero-Nardo points out that "[t]he Commonwealth alleges in the 2nd Amended Information that [] Marrero-Nardo committed the 'crimes on or about May 2004 – May 2005,' a span of thirteen [] months." *Id.* at 23; *see also id.* (relying upon *Commonwealth v. Devlin*, 333 A.2d 888 (Pa. 1975) for the proposition that a "fourteen-month span of time was such an egregious encroachment upon the [a]ppellant's ability to defend himself that the jury was reversed." (emphasis omitted)).

The trial court cogently addressed and expounded upon Marrero-Nardo's above claim in its Post-Sentence Order, set forth the relevant law, and determined that this claim lacks merit. *See* Post-Sentence Order, 1/8/18, at 13-17. We agree with the trial court's rationale and determination, and therefore affirm on this basis with regard to this claim. *See id.*

In his issues numbered 2 (second portion of this issue) through 7, which we will address simultaneously due to their relatedness, Marrero-Nardo urges that the Commonwealth failed to present sufficient evidence to convict him of any of the above-mentioned offenses, and that his convictions were against the weight of the evidence. *See* Brief for Appellant at 25-32. In sum, Marrero-Nardo contends that the testimony of S.M. and L.M. was insufficient to establish all elements of the offenses beyond a reasonable doubt, and he attacks the credibility of their testimony. *See id.*

In its Post-Sentence Order, the trial court addressed Marrero-Nardo's claims, set forth the applicable standards of review and Crimes Code

- 10 -

provisions, and determined that the convictions were neither against the sufficiency nor weight of the evidence. **See** Post-Sentence Order, 1/8/18, at 18-31. We affirm on this basis in rejecting Marrero-Nardo's weight and sufficiency challenges. **See id.**

In his eighth and final issue, Marrero-Nardo argues that the trial court abused its discretion in imposing an "illegal and/or unreasonable sentence[.]"[5] Brief for Appellant at 33. Marrero-Nardo maintains that the aggregate sentence imposed "was unduly harsh given his relatively minor prior [criminal] record, his conduct while out on bail, the determination of the [Sexual Offenders Assessment Board] that he was not a sexually violent predator, and the timeframe of the alleged offenses." **Id.** at 35.

There is no absolute right to appeal the discretionary aspects of a sentence. **Commonwealth v. Hill**, 66 A.3d 359, 363 (Pa. Super. 2013). Rather, where, as here, the appellant has preserved the discretionary sentencing claim for appellate review by raising it in a timely post-sentence Motion,

> [t]wo requirements must be met before we will review [a challenge to the discretionary aspects of sentence] on its merits. First, [pursuant to Pa.R.A.P. 2119(f),] an appellant must set forth in his brief a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence. Second, the appellant must show that there is a substantial question that the sentence imposed is not appropriate

---

[5] Though Marreo-Nardo facially purports to challenge the legality of his sentence, a review of his argument reveals that he, in actuality, challenges the discretionary aspects of his sentence.

- 11 -

under the Sentencing Code. That is, that the sentence violates either a specific provision of the sentencing scheme set forth in the Sentencing Code or a particular fundamental norm underlying the sentencing process. We examine an appellant's Pa.R.A.P. 2119(f) statement to determine whether a substantial question exists.

*Id.* at 363-64 (citation to case law and brackets omitted).

Marrero-Nardo failed to include the requisite Rule 2119(f) statement in his brief. However, we may overlook this defect, since the Commonwealth did not object to it. *See Commonwealth v. Roser*, 914 A.2d 447, 457 (Pa. Super. 2006) (stating that an appellant's failure to include the Rule 2119(f) statement results in waiver of his or her discretionary sentencing challenge only where the Commonwealth lodges an objection to the omission of the statement).

Even assuming, *arguendo*, that Marrero-Nardo's claim raises a substantial question,[6] the trial court, in its Post-Sentence Order, concisely addressed the discretionary aspects of sentencing claim, set forth the applicable standard of review, and correctly determined that the court properly exercised its discretion in sentencing Marrero-Nardo. *See* Post-

---

[6] *See Commonwealth v. Caldwell*, 117 A.3d 763, 770 (Pa. Super. 2015) (*en banc*) (stating that "[t]his Court has [] held that an excessive sentence claim—in conjunction with an assertion that the [trial] court failed to consider mitigating factors—raises a substantial question." (citation and quotation marks omitted)). *But cf. Commonwealth v. Downing*, 990 A.2d 788, 794 (Pa. Super. 2010) (stating that "[t]his Court has held on numerous occasions that a claim of inadequate consideration of mitigating factors does not raise a substantial question for our review." (citation omitted)).

Sentence Order, 1/8/18, at 31-33. We likewise conclude that the sentence imposed was not unduly harsh given, *inter alia*, the heinousness of the offenses, and thus affirm on this basis as to Marrero-Nardo's final issue on appeal. ***See id.***

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/26/2018

ENTERED & FILED
CLERK OF COURTS
LEBANON, PA
2018 JAN 8 PM 4 06

IN THE COURT OF COMMON PLEAS OF LEBANON COUNTY PA
PENNSYLVANIA

### CIVIL DIVISION

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | NO. CP-38-CR-26-2016 |
| | : | |
| v. | : | |
| | : | |
| SAMUEL MARRERO-NARDO, SR. | : | |

**APPEARANCES:**

MEGAN RYLAND-TANNER, ESQUIRE          FOR THE COMMONWEALTH
DEPUTY DISTRICT ATTORNEY

TIMOTHY ENGLER. ESQUIRE               FOR SAMUEL MARRERO-NARDO, SR.
STEINER SANDOE

## OPINION, TYLWALK, P.J., JANUARY 8, 2018.

In the Criminal Complaint filed in this action, Defendant was charged with Criminal Solicitation/Commit Rape of a Child, Involuntary Deviate Sexual Intercourse ("IDSI"), Unlawful Communication With a Minor, Statutory Sexual Assault, Aggravated Indecent Assault, two counts of Indecent Assault, and two counts of Corruption of Minors[1] resulting from his conduct with two minor

---

[1] Counts 1 through 7, 18 Pa.C.S.A. §§902(a)(18)/3121(c), 18 Pa.C.S.A. §6318(a)(1), 18 Pa.C.S.A. §3122.1, 18 Pa.C.S.A. §3125(a)(8), 18 Pa.C.S.A. §3126(a)(7), 18 Pa.C.S.A. §3126(a)(8), and 18 Pa.C.S.A. §6301(a)(1)(i), respectively.

1

Circulated 12/07/2018 02:07 PM

female victims, S.M. and L.M., during the period from May 2004 through May 2005 when he was staying in their family's home.

The Affidavit of Probable Cause indicated that S.M. had reported that she and Defendant had "performed oral sex on each other." However, the portion of the Criminal Complaint describing the IDSI charge alleged only that S.M. performed oral sex on Defendant. A Preliminary Hearing was conducted by Magisterial District Judge Kim R. Wolfe on December 31, 2015. At the Preliminary Hearing, S.M. testified that Defendant licked her vagina with his tongue and placed his tongue inside her vagina. However, she did not recall touching Defendant's penis. As a result, the IDSI charge was dismissed for the Commonwealth's failure to present a *prima facie* case. The prosecuting officer who had prepared the Criminal Complaint had intended to charge that Defendant had performed oral sex on S.M., but had mistakenly omitted that allegation.

After the matter was bound over for Court, an Information was filed as to the remaining charges on January 26, 2016. On January 27, 2016, the Commonwealth filed a Motion to Amend the Information to include an IDSI charge based on S.M.'s testimony at the Preliminary Hearing pursuant to Pa.R.Crim.P. 564. Defendant filed a response to the Commonwealth's Motion to Amend arguing that the matter was governed by Pa.R.Crim.P. 560 regarding

2

contents of a criminal information, rather than Rule 564 which deals with amendment.

On March 15, 2016, Defendant filed a Pretrial Motion in which he sought certain discovery, requested dismissal of the Solicitation charge in Count 1 of the original Information based on the expiration of the applicable statute of limitations and moved to quash the Corruption of Minors charges at Counts 8 and 9. Thereafter the discovery issue was resolved and the Commonwealth filed the 1st Amended Information on February 16, 2016 correcting the statutory references to the two charges of Corruption of Minors.

We scheduled a hearing on the Commonwealth's Motion to Amend and the Defendant's pretrial request for dismissal of the solicitation charge for March 30, 2016. On that date, the parties agreed to submit Briefs in lieu of a hearing. After the Briefs were filed, we dismissed the Solicitation charge, granted the Commonwealth leave to file an amended Information, and granted Defendant the right to request either a Preliminary Hearing or a Writ of Habeas Corpus hearing on the IDSI charge by Order dated June 14, 2016. Defendant filed a Petition for Writ of Habeas Corpus on June 16, 2016. After we conducted a Habeas Corpus hearing on July 29, 2016, we issued an Order dated September 14, 2016 finding that the Commonwealth had established a *prima facie* case as to that charge. A

3

2nd Amended Information which deleted the Solicitation charge and included the IDSI charge was filed on September 19, 2016.

A jury trial was conducted on May 3 and 4, 2017. At the conclusion of the Commonwealth's case, we granted Defendant's Motion for Judgment of Acquittal as to the charge of Aggravated Indecent Assault, 18 Pa.C.S.A. §3125(a)(8), which was included as Count 5 in the Second Amended Information. Defendant was convicted of one count of IDSI, two counts of Unlawful Contact or Communication with a Minor, one count of Statutory Sexual Assault, two counts of Indecent Assault, and two counts of Corruption of Minors.[2]

A Presentence Investigation Report was prepared an on August 30, 2017, Defendant was sentenced as follows:

| Count 1 – IDSI (F1) | 78 months to 12 years |
|---|---|
| Count 2 – Unlawful Contact/ Communication with a Minor (F1) | 21 months to 4 years |
| Count 3 – Unlawful Contact/ Communication with a Minor (F1) | 14 months to 5 years |
| Count 4 – Statutory Sexual Assault (F2) | 24 months to 5 years |
| Count 6 – Indecent Assault (M1) | 14 months to 5 years |
| Count 7 – Indecent Assault (M2) | 1 year to 2 years |

---

[2]Counts 1 through 4 and 6 through 10 of the 2nd Amended Information.

4

Count 8 – Corruption of Minors (M1)　　　1 year to 2 years

Count 9 – Corruption of Minors (M1)　　　14 months to 5 years

Both the Commonwealth and Defendant have filed Post-Sentence Motions which are presently before us. In his Post Sentence Motion, Defendant contends that we erred in permitting the Commonwealth to amend the Information to include the IDSI charge, challenges the sufficiency and weight of the evidence, and argues that we imposed an illegal and/or unreasonable sentence. In its Motion, the Commonwealth claims that we utilized an incorrect prior record score to determine the sentencing ranges for Defendant's offenses. Both parties have submitted Briefs addressing these contentions and the Motions are now before us for resolution.

## Amendment to Include IDSI Charge

The Commonwealth sought leave to amend the original Information pursuant to Pa.R.Crim.P. 564:

Rule 564. Amendment of Information

The court may allow an information to be amended when there is a defect in form, the description of the offense(s), the description of any person or any property, or the date charged, provided the information as amended does not charge an additional or different offense. Upon amendment, the court may grant such postponement of trial or other relief as is necessary in the interests of justice.

5

Pa.R.Crim.P. 564, effective until Dec. 21, 2017. Defendant assigns error to our

Order permitting the Commonwealth to amend the Information to include the

IDSI charge. Although he did not raise this argument in his response to the

Motion to Amend or in his Brief opposing the amendment, he now argues that

the IDSI charge could only have been properly reinstated pursuant to Pa.R.Crim.P.

544:

> Rule 544. Reinstituting Charges Following Withdrawal or Dismissal
>
> (A) When charges are dismissed or withdrawn at, or prior to, a preliminary hearing, or when a grand jury declines to indict and the complaint is dismissed, the attorney for the Commonwealth may reinstitute the charges by approving, in writing, the re-filing of a complaint with the issuing authority who dismissed or permitted the withdrawal of the charges.
>
> (B) Following the re-filing of a complaint pursuant to paragraph (A), if the attorney for the Commonwealth determines that the preliminary hearing should be conducted by a different issuing authority, the attorney shall file a Rule 132 motion with the clerk of courts requesting that the president judge, or a judge designated by the president judge, assign a different issuing authority to conduct the preliminary hearing. The motion shall set forth the reasons for requesting a different issuing authority.

Pa.R.Crim.P. 544.

6

Defendant correctly notes that the refiling of charges is the sole means for reinstatement of a charge which has already been dismissed by an issuing authority for the Commonwealth's failure to establish a *prima facie* case. *Commonwealth v. Carbo*, 822 A.2d 60 (Pa. Super. 2003).[3] Defendant also correctly cites *Commonwealth v. Weigle*, 997 A.2d 306 (Pa. 2010) for the proposition that the Commonwealth cannot charge an offense which was dismissed after a preliminary hearing via amended information on the basis that it was cognate to those charges which were bound over for court. We note, however, that these cases and other decisions in which the appellate courts have condemned the practice of amending an information to include a charge without refiling in accordance with Rule 544 all involve a charge which was previously dismissed at the preliminary hearing for the Commonwealth's failure to establish a *prima facie* case. See, *Commonwealth v. Jones*, 929 A.2d 205 (Pa. 2007); *Commonwealth v. Williams*, 166 A.3d 460 (Pa. Super. 2017); *Commonwealth v. Pettersen*, 49 A.3d 903 (Pa. Super. 2012); *Commonwealth v. Lane*, 2016 WL 7188777 (Pa. Super. 2016) (non-precedential memorandum decision); *Commonwealth v. Klenowitz*, 2014 WL 10936960 (Pa. Super. 2014 (non-precedential memorandum decision); *Commonwealth v. Weigle, supra;*

_____

[3] This case was overruled on other grounds in *Commonwealth v. Dantzler*, 135 A.3d 1109 (Pa. Super. 2016).

7

*Commonwealth v. Carbo, supra.* We do not believe these propositions are

relevant or determinative in the situation present here.

In *Weigle*, the court explained:

> In our view, the proper disposition of this appeal does not turn on the pure definition or understanding of cognate offenses in general, nor does it turn on the question, well-briefed here, of what sorts of offenses, or relationships between offenses, should be deemed embraced by Rule 560(B)(5)' s cognate offense limitation on bills of information. **The case *sub judice* does not present a circumstance where the offense alleged to be cognate was never charged, which can occur through oversight, the relatively compressed time-frame in which complaints are drafted, or because further investigation or developments revealed a related charge that was not included in the original complaint.** Instead, here, the robberies alleged to be "cognate" were actually charged not once, but twice. Two preliminary hearings—judicial proceedings designed, ... "to protect an individual's right against an unlawful arrest and detention" were held (the second serving as a second chance for the Commonwealth to prove or perfect its *prima facie* case); two separate judicial officers determined that the robbery charges were not sustained; and the Commonwealth, which had a right to appeal the final adverse determination by the Court of Common Pleas, elected not to do so. The robbery charges here were not "cognate" to the other offenses alleged in the complaint: they were part of that complaint; they were subject to specific judicial dispute; they were dismissed by judicial officers for an adjudged lack of evidence; and the Commonwealth failed to appeal the final order of dismissal.
>
> Rule 560(B)(5) obviously was not adopted or intended to serve as a prosecutorial avoidance of an adverse preliminary hearing decision involving charges that were **actually forwarded** in a criminal complaint, only to be dismissed by a judicial officer for want of a *prima facie* case. To hold otherwise would defeat the purpose of the preliminary hearing procedure and make the Commonwealth, in essence, the sole architect and

8

arbiter of a predetermined "appeal" that would substitute for the appeal it could have pursued, but did not.

There is simply no avoiding the fact that resort to Rule 560(B)(5) in a circumstance like this one serves as an improper collateral attack upon a judicial determination. The sole, and intended, effect of the Commonwealth's action is to overturn the unappealed preliminary hearing determination. Judge Dembe obviously appreciated the fact that the Commonwealth's action amounted to a collateral attack upon the determination of a judge of equal jurisdiction; thus, she invoked the coordinate jurisdiction rule. Furthermore, the Commonwealth itself was candid at the hearing before Judge Dembe: it believed that the preliminary hearing officers were simply mistaken in their legal assessment of the Commonwealth's case for robbery. ... ("Clearly, that's a robbery, so there is no issue that we made out the charges."). But, as Judge Dembe also recognized, whether those judges were correct in their legal assessment of the robbery charges was not properly before her. And, we conclude, dissatisfaction with those rulings is not a proper basis to invoke Rule 560(B)(5) in order to unilaterally reinstate judicially-dismissed charges under the guise of the cognate offense provision.

997 A.2d at 315-316 (citations omitted, emphasis supplied).

In contrast, the instant action does not present a collateral attack against Judge Wolfe's determination that the Commonwealth had failed to establish a *prima facie* case of IDSI. That determination was made upon the allegation that S.M. had performed oral sex on Defendant and Judge Wolfe dismissed the charge due to S.M.'s testimony that she could not recall that occurring. The Criminal Complaint did not charge Defendant with IDSI for performing oral sex on S.M. Thus, Judge Wolfe did not evaluate the IDSI offense in light of the evidence

9

adduced at that proceeding because such allegations were mistakenly omitted from the Criminal Complaint. Since the IDSI charge alleging that Defendant had performed oral sex on S.M. was not before Judge Wolfe, it was not the IDSI charge which was dismissed.

Pa.R.Crim.P. 560 states that the information shall contain "(5) a plain and concise statement of the essential elements of the offense substantially the same as or cognate to the offense alleged in the complaint." Pa.R.Crim.P. 560(B)(5). This Rule has been interpreted to mean that a cognate offense never had to be filed in the first place as long as the other similar offense was bound over by the issuing authority. See, *Commonwealth v. Jacobs*, 640 A.2d 1326 (Pa. Super. 1994).[4]

The IDSI charge of which Defendant was convicted was never before or dismissed by Judge Wolfe. There was no need to refile the charge under Rule 544(A) because it was cognate to the charges which were bound over for court and in conformity with S.M.'s testimony at the Preliminary Hearing. The IDSI charge at issue here was not dismissed at the preliminary hearing stage. Since we determined that it was cognate to those charges which were bound over, we find

---

[4] The ultimate holding in this case is at odds with the holding of *Weigle* because the charge which was included in the information had been dismissed at the preliminary hearing level.

10

no error in our order granting the Commonwealth permission to amend the Information. There was no need to file (or "refile") this IDSI charge in the magisterial district court. To have required the Commonwealth to do so would have rendered the provisions of Rule 560(B)(5) meaningless.

In granting the Motion to Amend, we determined that this IDSI charge was cognate to the offenses established at the Preliminary Hearing and bound over for court and was in conformity with S.M.'s testimony at the Preliminary Hearing. Due to the early point in the proceedings when the amendment was made, we found no resulting prejudice to Defendant and granted the opportunity for Defendant to request either a Preliminary Hearing or a Habeas hearing on this charge. Defendant requested that we conduct a Habeas hearing. We scheduled a hearing at which the Commonwealth submitted the transcript of the Preliminary Hearing in support of the IDSI charge at issue here. After reviewing the transcript, we found that S.M.'s testimony provided ample support for the inclusion of the IDSI charge. The purpose of Defendant's Preliminary Hearing has not been defeated with regard to the allegations alleged in the Amended Information as Defendant was afforded a meaningful evaluation of the IDSI offense charged in the 2nd Amended Information at the Habeas proceeding conducted by the Court.

11

Moreover, deficiencies in the presentation at the preliminary hearing stage do not entitle a defendant to relief following a jury's conviction at trial for once a defendant has gone to trial and been found guilty of a crime, any defect in the preliminary hearing is rendered immaterial. *Commonwealth v. Jones*, 929 A.2d 205 (Pa. 2007); *Commonwealth v. Klenotiz*, 2014 WL 10936960 (Pa. Super. 2014) (non-precedential memorandum decision). Defendant has been convicted of this IDSI charge after a jury trial at which he presented various evidence to support his defense. Thus, any irregularity which occurred at the preliminary hearing stage has been rendered immaterial at this juncture and would not entitle him to relief.

In this case, the amendment was permitted early on in the proceedings. There was no element of last-minute surprise as Defendant already knew of these allegations through the Affidavit of Probable Cause and S.M.'s testimony at the Preliminary Hearing. Defendant was afforded the opportunity to challenge the Commonwealth's evidence on this IDSI charge and had ample opportunity to prepare his defense to it prior to trial. Had he desired to return to the issuing authority who had dismissed the IDSI charge after the Preliminary Hearing, he could have done so. Instead, he elected to proceed with a Habeas Corpus hearing before the Court. We do not believe that the amendment was granted in error;

12

however, even if the procedure employed here was procedurally irregular, Defendant's rights were fully protected.

## Due Process – Specificity of Timeframe of Offenses

Defendant next claims a violation of his due process rights due to what he contends to be a lack of a sufficiently particular timeframe for the IDSI charge.

It is the duty of the prosecution to "fix the date when an alleged offense occurred with reasonable certainty." *Commonwealth v. Jette,* 818 A.2d 533, 535 (Pa.Super.2003) (citation omitted). The purpose of so advising a defendant of the date when an offense is alleged to have been committed is to provide him with sufficient notice to meet the charges and prepare a defense. *Commonwealth v. Gibbons,* 567 Pa. 24, 784 A.2d 776 (2001).

However, "due process is not reducible to a mathematical formula," and the Commonwealth does not always need to prove a specific date of an alleged crime. *Commonwealth v. Devlin,* 460 Pa. 508, 515–516, 333 A.2d 888, 892 (1975).... Permissible leeway regarding the date provided varies with, *inter alia,* the nature of the crime and the rights of the accused. *See* Pa.R.Crim.P. 560(B)(3), stating that it shall be sufficient for the Commonwealth to provide in the information, if the precise date of an offense is not known, an allegation that the offense was committed on or about any date within the period fixed by the statute of limitations. *Commonwealth v. Koehler,* 914 A.2d 427, 436 (Pa.Super.2006).

Case law has further "established that the Commonwealth must be afforded broad latitude when attempting to fix the date of offenses which involve a continuous course of criminal conduct." *Commonwealth v. G.D.M., Sr.,* 926 A.2d 984, 990 (Pa.Super.2007) (quoting *Commonwealth v. Groff,* 378 Pa.Super. 353, 548 A.2d 1237, 1242 (1988)). This is especially true when the case involves sexual offenses against a child victim. *Id.*

13

*Commonwealth v. Riggle,* 119 A.3d 1058, 1069-1070 (Pa. Super. 2015).

The 2nd Amended Information charges that the crimes were committed "on or about May 2004-May 2005." Defendant contends that the Commonwealth failed to prove the date of the IDSI charge with sufficient particularity to uphold his conviction and that he was thereby unable to present a defense to this charge. Defendant points to *Commonwealth v. Devlin*, 333 A.2d 888 (Pa. 1975), in which the Supreme Court of Pennsylvania found that a fourteen-month timespan was such an egregious encroachment upon the defendant's ability to defend himself that the jury verdict was reversed. However, in *Devlin*, the court was concerned with one act of sodomy rather than a pattern of sexual abuse.

Timeframes such as alleged in this case, particularly when related to the commission of sex crimes against minor victims, have been upheld on numerous occasions. For example, in *Commonwealth v. Riggle*, the court found that the dates of sex offenses against a minor which were alleged to have occurred from June 2007 to February 2008 were not impermissibly vague when there was an ongoing pattern of sexual abuse where the defendant was alleged to have committed oral sex on the victim five times and committed other acts on various occasions. Also, in *Commonwealth v. Brooks*, 7 A.3d 852 (Pa. Super. 2010), the

14

defendant argued that the Commonwealth had failed to prove the commission of the crime "on any date fixed with reasonable certainly, within the statutory period, let alone that the alleged crimes were committed between May-August of 2001 as charged in the criminal information." 7 A.3d at 857. In dismissing this claim, the court noted:

> Our review of the record supports the trial court's conclusions. When "the precise date of [an offense] is not known or if the offense is a continuing one," Rule 560(B)(3) of the Pennsylvania Rules of Criminal Procedure provides that a criminal information "signed by the attorney for the Commonwealth shall be valid and sufficient in law if it contains ... an allegation that it was committed on or about any date fixed within the statute of limitations [.]" Appellant was charged with committing the sex offenses against the victims during the summer months of 2001, and G.W. testified that she recalled the abuse occurring when it was warm outside and she was wearing shorts when the sexual abuse occurred.
>
> ...
>
> Finally, in *Devlin, supra,* "our Supreme Court opted for a balancing approach to resolve conflicting interests of the accused vis-à-vis the victim when it came to the specificity required to be proven as to the time-frame of the alleged crime." *Commonwealth v. Fanelli,* 377 Pa.Super. 555, 547 A.2d 1201, 1204 (1988) (*en banc*). Appellant has never asserted how the lack of specificity in the information or victims' testimony rendered him unable to prepare a defense to the charges brought against him. Considering the victims' testimony in this case, vis-à-vis Appellant's general assertion of a due process violation, our review of the record and applicable law supports the trial court's conclusion that the victims' testimony was sufficient to support the informations filed by the Commonwealth such that, if any due process violation in fact occurred, it must yield to the rights of the victims. *See McClucas,* 516 A.2d at 71 (explaining that, because the sexual offenses occurred over a period of

15

time, "we are not prepared to say that the lack of chronological specificity seriously encroached upon appellant's ability to defend himself").

*Id.* at 859-860.

We first disregard Defendant's contention that he could not prepare a defense due to the broad range of time encompassed by the dates alleged by the Commonwealth. Defendant himself testified that he was not present at the victims' home during this time period. He also presented the testimony of his former counselor, Elizabeth Hoover, who testified that he was living with her from August 2004 until March 2005 and stayed overnights in her trailer during that time. Defendant complains that the span of the timeframe has hampered his defense because he could not present evidence that his victims' behavior after the occurrence of the incidents was inconsistent with their suffering a traumatic incident at his hands. However, he also testified to subsequently spending time with both victims, taking L.M. to the movies and cutting her hair, and taking S.M., who was in a romantic relationship with Defendant's son at the time, to an art show. His witness, Daryl Szajek, also testified to being with Defendant, his son, and S.M. at the art show. All of these events occurred after the dates of the incidents at issue here. Thus, we find that Defendant's ability to present his defense was not hampered in any way.

Moreover, this case involves a continuing pattern of sexual abuse perpetrated on two sisters. These dates are based on S.M.'s recollection that the crimes occurred when she was in ninth grade, which was the 2004-2005 school year, on L.M.'s recollection that they occurred when she was nine years old and being homeschooled, and on the dates when Defendant was working for the girls' father and staying in the family home. S.M. testified that she had intercourse with Defendant when it was warm out and that she believed it happened close to the end of her school year. Defendant also called the girls' mother, D : M' , as a witness at trial. She indicated that it was possible that Defendant had worked for her husband sometime between 2004 and 2005. By the time her husband's business went bankrupt in 2005, Defendant was no longer working there. She believed it was possible S.M. would have been in ninth grade from fall 2004 through spring 2005, noting that she has difficulty with dates and that she had figured out the dates with her children's help. In addition, Defendant had admitted to an investigating police officer that he had been staying in the victims' home during that time period.

17

## Sufficiency/Weight of the Evidence

Defendant challenges the sufficiency of the Commonwealth's evidence to sustain all of his convictions in this action. In addition, he challenges the weight of the evidence as to his IDSI conviction, arguing that S.M.'s testimony was not credible or reliable.

In considering a challenge to the sufficiency of the evidence, the court must view all the evidence admitted at trial in the light most favorable to the verdict winner to determine whether there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. *Commonwealth v. Walker,* 874 A.2d 667 (Pa. Super. 2005). In applying this test, the court may not weigh the evidence and substitute its judgment for the fact-finder. *Id.* The facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. *Id.* Any doubts regarding guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. *Commonwealth v. Nahavandian,* 849 A.2d 1229-30 (Pa. Super. 2004). It is within the province of the fact-finder to determine the weight to be given the testimony and to believe all, part, or none of the evidence. *Commonwealth v. Flamer,* 848 A.2d 951 (Pa. Super. 2004). The Commonwealth may sustain its burden of

18

proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. *Commonwealth v. Gooding,* 818 A.2d 546 (Pa. Super. 2003).

It is the province of the trier of fact to pass upon the credibility of witnesses and the weight to be accorded the evidence produced. *Commonwealth v. Smith,* 457 A.2d 638 (Pa. 1974). A mere conflict in the testimony of witnesses does not render the evidence insufficient. *Commonwealth v. Heistand,* 685 A.2d 1026 (Pa. Super. 1996). After viewing the evidence adduced at trial in the light most favorable to the Commonwealth, as the verdict winner, we believe that there was sufficient evidence to sustain the jury's verdict of guilty on these charges.

Challenges to the weight of the evidence and sufficiency of the evidence are discrete inquiries. *Commonwealth v. Davis,* 799 A.2d 860 (Pa.Super. 2002). A motion for a new trial on the grounds that the verdict is contrary to the weight of the evidence concedes that there is sufficient evidence to sustain a verdict but contends that the verdict is against the weight of the evidence. *Id.* The decision whether to grant a new trial on this basis rests within the discretion of the trial court. *Commonwealth v. Holmes,* 663 A.2d 771 (Pa.Super. 1995). In reviewing the weight of the evidence, all the evidence should be examined. *Commonwealth v. Gonce,* 466 A.2d 1039 (Pa.Super. 1983).

19

A trial court should award a new trial on the ground that the verdict is against the weight of the evidence only when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and make the award of a new trial imperative so that right may be given another opportunity to prevail. *Commonwealth v. Gonce, supra.* The weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. *Commonwealth v. Simmons,* 662 A.2d 621, 630 (Pa. 1995). The function of the jury is to pass on the credibility of witnesses and determine the weight to be accorded to a particular piece of evidence. *Id.*

At the trial, S.M. testified that during May 2004 through May 2005 she was living in her home with her parents and her two sisters. S.M. was born on October 15, 2989, therefore being fourteen to fifteen years old and in the ninth grade. She was the oldest of the three sisters and L.M. was the youngest. During that time, S.M. spent a lot of time with Defendant as he stayed at the family's home on a frequent basis due to his employment with S.M.'s father.

S.M. explained that she was very insecure and that Defendant would flirt with her and give her compliments. After a time, their contact became physical. On one occasion, Defendant had her straddle him and had her move back forth so

20

as to grind against him. While this was happening, Defendant was making moaning and groaning noises. Both S.M. and Defendant were clothed during this episode which occurred on the living room couch in the early evening when no one else was in the home.

S.M. testified that the two subsequently also had sexual intercourse. She explained that they were in the kitchen and she was on the counter. Defendant was touching and kissing her. He kept telling her how good it would feel to have sex, stating that she "can't tease him forever." After they had moved to the corner of the living room couch, he touched and licked the skin of her vagina on both the top and the inside. Then he penetrated her vagina with his penis. She testified that she had been telling Defendant "no" when they were in the kitchen and that she said nothing in the living room because she couldn't speak and was crying.

S.M. explained that the rest of the family members were upstairs sleeping at the time of this incident. She did not tell her parents because she felt guilty, ashamed, and scared. Her father was not around the home much at the time and she did not trust her mother. She testified that she was never married to Defendant and that Defendant was an adult at the time. She did not know the exact month or date of either incident but knew that these incidents occurred

21

when she was in ninth grade and Defendant was staying at her family's home. She thought the weather was warm at the time. She acknowledged that she had dated Defendant's son, Sam, Jr., sometime after this incident.

S.M. finally told her mother in or about 2008, but she did not tell her sisters. After she told her mother, her younger sister, L.M., wrote her a letter sometime after 2008 telling her of similar incidents with Defendant. S.M. did not tell L.M. what had happened with Defendant, but L.M. told her about some of the incidents that happened to her. She ultimately decided to report the abuse to the police after an incident when she was shopping and someone tried to take her picture with a cellphone in a dressing room. About that same time, she found that Defendant had contacted her via private message on Facebook. S.M. recognized the profile picture as being Defendant. The first time was dated September 18, 2014 and simply asked her to get in touch and left a phone number. The second message, dated December 10, 2014, stated that "I was so nervous back then I should have given it to you I regret not cumming in you." (Exhibit 1) S.M. did not notice the messages immediately after they were sent and did not reply to either one. However, she had read them before the incident in the dressing room.

22

Samuel Marrero, Jr. also testified at the trial. He confirmed that he had a Facebook account, but that his profile picture was of himself and he had never used his father's picture on his account. He testified that he had never communicated with S.M. on Facebook and that he did not send those messages to her. He also recognized the profile picture on the account used to communicate with S.M. as Defendant. On cross-examination, Sam, Jr. admitted that he had sex with S.M. when they were dating. He did not ask his father to reach out to her on his behalf and he had never used his father's Facebook page. He also acknowledged that he had been in a relationship with the same woman who had accompanied him to court the day of the trial at the time when the private messages were sent to S.M.

At the trial, L.M. testified that Defendant had been living with her family during the time period from May 2004 through May 2005 when she would have been nine years old. She recalled that she was in fourth grade at the time and that she was being homeschooled. She and her middle sister would help each other with their schoolwork during the day while her parents were at work at her father's business. She recalled that Defendant was staying with the family at that time and that he slept on the family room couch. Her parents were not at home much at the time and Defendant was there more often than her parents. At first

23

Defendant had acted like a brother to her, but their relationship changed after a while when Defendant began to touch her "boobs and butt" on top of her clothes with his hands. This usually occurred at night in the family room or the living room while they sat on the couch watching movies and no one else was there. It would also occur during the school day if Defendant was not working and her middle sister was in her room. Defendant also kissed her on the lips and asked her to have sex with him. He told her that S.M. was having sex so that it was alright and not a big deal. L.M. explained that at the time she considered S.M. to be "the coolest person" and that everyone knew that she looked up to her oldest sister. She testified that the touching had occurred more than one time and that Defendant had attempted to coax her into having sex once or twice.

L.M. did not tell her parents because she was not close to her mother and her father was not very "present" in her life. She did not feel that she had anyone to tell and did not like to talk about this experience. She learned that it had also happened to S.M. because she had been listening from the stairway in her mother's home when S.M. was telling their mother about it in 2008. After she learned that it had also happened to S.M., she felt that she could confide in her. She was in ninth grade when she wrote the letter to S.M. telling her what had happened with Defendant. (Exhibit "13")

24

Luis Figueroa, who was in Defendant's cellblock at the Lebanon County Correctional Facility after his arrest on these charges, also testified. Defendant had told Figueroa that he had met the girls' parents and that they had let him stay in their home. While he was there, he was having sexual relations with the older girl regularly and also had sexual contact with the younger one. He told Figueroa that he had touched the younger girl's vagina with his hands and that he wanted to have intercourse with her but she was too young. Defendant had further explained to Figueroa that his son was going to be his cover-up.

Trooper Erica Miller also testified at the trial. Trooper Miller confirmed that Defendant's date of birth was November 16, 1969. She had determined the timeframe for the allegations after interviewing various witnesses, including S.M., L.M., and their mother. She narrowed it down to when L.M. was being homeschooled, S.M. was in ninth grade, and when Defendant was staying with them, which was the 2004-2005 school year. She had also confirmed that Defendant was in a Halfway House from April 1, 2004 to June 12, 2004.

The mother of S.M. and L.M. also testified. She indicated that it was possible that Defendant had worked for her husband sometime between 2004 and 2005. By the time were husband's business went bankrupt in 2005, Defendant was no longer working there. She believed it was possible S.M. would

25

have been in ninth grade from fall 2004 through spring 2005, noting that she has difficulty with dates and that she had figured out the dates with her children's help.

After viewing the evidence in the light most favorable to the Commonwealth as the verdict winner, we find sufficient evidence to support the jury's conviction on the IDSI charge. "A person commits a felony of the first degree when he or she engages in deviate sexual intercourse with a complainant by (7) who is less than 16 years of age and the person is four or more years older than the complainant and the complainant and person are not married." 18 Pa.C.S.A. §3123(a)(7). Deviate sexual intercourse is defined as sexual intercourse per os or per anus between human beings. 18 Pa.C.S.A. §3101. The act requires "penetration however slight." *Id.* A person can penetrate by use of the mouth or tongue. *In Interest of J.R.*, 648 A.2d 28 (Pa. Super. 1994).

At the trial, S.M. testified that she and Defendant were never married, that her date of birth is October 15, 1989 and that she was fifteen at the time these incidents occurred. She testified that Defendant licked her on the skin of the top and inside of her vagina. Trooper Miller testified that Defendant's date of birth is November 16, 1969, making him at least four years older than S.M. Defendant argues that the evidence was insufficient to establish the timing of his

26

commission of this offense. However, we must note that Defendant himself admitted that he told Trooper Miller that he was staying at the victims' home during 2004 to 2005. Along with the aforementioned evidence provided by S.M., L.M., and their mother, we believe that the evidence was sufficient to support Defendant's conviction. Together, this evidence establishes the elements necessary to support Defendant's conviction for IDSI and was insufficient to establish the time of the sexual abuse.

Defendant also argues that his conviction is against the weight of the evidence, arguing that S.M.'s testimony lacked credibility and reliability. He points out that S.M. testified that she did not remember placing her hands or mouth on Defendant's penis and that she did not report the sexual abuse until she was an adult.

After examining the evidence as a whole, we do not find the jury's verdict to be against the weight of the evidence with regard to Defendant's IDSI conviction. The testimony of a sexual assault victim, if believed, is a sufficient basis to support a verdict of guilty. *Commonwealth v. Shaffer,* 736 A.2d 411 (Pa. Super. 2000). S.M. explained that she did not immediately report Defendant's actions at the time because she did not have good relationships with her parents and she was scared and ashamed. She did not know at that time that L.M. had

27

also been subjected to the same type of conduct by Defendant and only learned of L.M.'s experiences after she told her mother sometime in 2008. S.M. further explained that she felt encouraged to report the incidents to the police after Defendant's attempts to contact her on Facebook and after she had been victimized in a dressing room. The jury obviously found S.M.'s testimony to be credible and we find no reason to disturb that finding.

Defendant next claims that the evidence was insufficient to sustain his two convictions for contacting S.M. and L.M. for the purpose of engaging in sexual relations. A person commits the offense of Unlawful Contact with a Minor "if he is intentionally in contact with a minor, or a law enforcement officer acting in the performance of his duties who has assumed the identity of a minor, for the purpose of engaging in an activity prohibited under any of the following, and either the person initiating the contact or the person being contacted is within this Commonwealth." 18 Pa.C.S.A. 6318(a)(1). During the trial, S.M. described Defendant's attempts to convince her to have sexual intercourse with him. He would tell her that it would feel good and that she "can't tease him forever." Defendant was ultimately successful in having sexual intercourse with S.M. At trial, L.M. testified that Defendant repeatedly asked her to have sex with him. Defendant knew how much L.M. admired S.M., and used that fact to persuade

28

L.M. that it was alright to have sex because S.M. was doing so. Defendant clearly made these statements in an effort to coax these minor victims to engage in sexual relations with him.

Defendant next contends the Commonwealth failed to present sufficient evidence to support his conviction for statutory sexual assault, 18 Pa.C.S.A. §3122.1: "a person commits a felony of the second degree when that person engages in sexual intercourse with a complainant to whom the person is not married who is under the age of 16 years and that person is four years older than the complainant." S.M. clearly testified that Defendant placed his penis inside of her vagina. She and Defendant were not married and this incident occurred when she was fifteen years old and Defendant was more than four years older than her. This provides ample support for Defendant's conviction on this charge.

Defendant also complains of the sufficiency of the evidence with regarding to his two convictions for indecent assault pursuant to 18 Pa.C.S.A. §3126:

> A person is guilty of indecent assault if the person has indecent contact with the complainant, causes the complainant to have indecent contact with the person or intentionally causes the complainant to come into contact with seminal fluid, urine or feces for the purpose of arousing sexual desire in the person or the complainant and:
>
> (7) the complainant is less than 13 years of age; or

29

(8) the complainant is less than 16 years of age and the person is four or more years older than the complainant and the complainant and the person are not married to each other.

At trial, S.M. testified that Defendant had her straddle him and he caused her to grind against his genital area. He also made moaning and groaning noises which is indicative of his sexual arousal and enjoyment. This also occurred when S.M. was fifteen years old, Defendant was more than four years older than her, and the two were not married. L.M. testified that on various occasions, Defendant would touch her breast and buttocks with his hands over her clothing. He would also kiss her on the lips. This conduct occurred when she was less than thirteen years old.

Defendant next contends that there was insufficient evidence to support his convictions for the two counts of Corruption of Minors, 18 Pa.C.S.A. §6301:

> Whoever, being of the age of 18 years and upwards, by any act corrupts or tends to corrupt the morals of any minor less than 18 years of age, or who aids, abets, entices or encourages any such minor in the commission of any crime, or who knowingly assists or encourages such minor in violating his or her parole or any order of court, commits a misdemeanor of the first degree.

Here, Defendant, being over the age of 18 years, committed numerous acts

of sexual abuse and extended various communications regarding sexual contact to S.M. and L.M., all of which tended to corrupt the morals of these minors. Thus, we find no grounds for relief on this basis.

We likewise find no reason to disturb the findings of the jury on the issue of the credibility of S.M. and L.M. We find no inconsistencies in their testimony and both victims fully explained their delay in reporting these incidents.

## Harshness of Sentence

Lastly, Defendant complains that we imposed an unduly harsh sentence in this matter, arguing that his relatively minor record, his conduct while out on bail, the determination that he was not a sexually violent predator, and the timeframe of the offenses rendered his sentence unreasonable. We disagree with his assessment of his sentence.

In determining a sentence, a judge is to follow the general principle that the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it related to the impact on the life of the victim and on the community and the rehabilitative needs of the defendant. *Commonwealth v. Monahan*, 860 A.2d 180, 184 (Pa. Super. 2004). We must also consider the particular circumstances of the offense and the character of the defendant. *Commonwealth v. Griffin*, 804 A.2d 1, 10 (Pa. Super.

31

2002). A sentencing court should refer to the defendant's prior criminal record, his age, personal characteristics and his potential for rehabilitation. *Commonwealth v. Griffin, supra.* An unreasonable sentence is one that is either irrational or not guided by sound judgment – the defendant must establish that the court ignored or misapplied the law, exercised its judgments for reasons of partiality, prejudice, bias, or ill will, or arrived at a manifestly unreasonable decision. *Commonwealth v. Hyland,* 875 A.2d 1175 (Pa. Super. 2005).

Defendant's sentence was well within the statutory limits for the offenses of which he was convicted. Prior to imposing Defendant's sentence, we considered his Presentence Investigation Report, which included any applicable mitigating factors. We believe the sentence imposed was by no means unduly harsh under the circumstances of this case. Defendant engaged in a prolonged pattern of sexual abuse of two young girls in their own home. He groomed the girls by acting as a friend and companion, giving them compliments, and coaxing them with descriptions of the attributes of sexual intimacy. He also preyed on L.M.'s vulnerability as a young girl who looked up to her older sister. He took advantage of the girls' haphazard household and their lack of relationship with their parents in order to gratify his own sexual desires. Moreover, he attempted to cast doubt on his own son's integrity by blaming the Facebook contacts with

32

S.M. on him. These crimes have haunted the lives of his two young victims and S.M. spoke of the need to protect other vulnerable young people from Defendant's actions. These factors, along with his criminal record, lack of remorse, and cavalier attitude toward the charges compelled us to impose a sentence which would draw his realization of the heinous nature of his crimes. Under these circumstances, we cannot say that our sentence was the result of any bias, prejudice, or ill will or was a misapplication of the law and we find no reason to reconsider the sentence on this basis.

## Commonwealth's Post Sentence Motion – Defendant's Prior Record Score

In its Post-Sentence Motion, the Commonwealth seeks resentencing based on its position that we used an incorrect prior record score to determine the ranges for Defendant's charges. At Sentencing, it appeared that Defendant had previously pled guilty to two separate Possession With Intent to Deliver offenses ("PWID"), one graded as a felony and the other graded as a misdemeanor. As a result, Defendant was sentenced in accord with a prior record score of 2.

At Sentencing, the Commonwealth attorney questioned the accuracy of the prior record score of 2 based on her belief that both of the prior PWID convictions were graded as felonies and that the correct score was therefore 4. Thereafter, the Commonwealth obtained the actual records involving both of the prior

33

convictions from Berks County. The Commonwealth is correct as the documents provided do indicate that Defendant had two prior felony convictions, which would indicate that the correct score was 4. We believe that we must there resentence Defendant based on the correct prior record score.